Marvin Joe COOPER and Archie Kerry Cooper, Petitioners-Appellants,

v.

Carl GRIFFIN, Sheriff, Chatham County and Luke Sims, Jailer, Chatham County Jail, Chatham County, Georgia, Respondents-Appellees.

No. 71–1664

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1972.

John J. Sullivan, Savannah, Ga., for petitioners-appellants.

Andrew J. Ryan, Dist. Atty., Eastern Circuit, Chatham County, Savannah, Ga., for respondents-appellees.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is an appeal by two brothers, Marvin and Archie Cooper, from the de-

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

nial of habeas corpus relief by the district court. In their habeas petitions below, the brothers contended that their convictions in a Georgia superior court were invalid because they were based upon confessions obtained in violation of their *Miranda* rights. The district court, after an evidentiary hearing, ruled that the state trial court was correct in its determination that the defendants had waived their *Miranda* rights. In view of the undisputed evidence in the record that both boys are mentally retarded, we hold that they did not knowingly and intelligently waive their rights.

### I.

On July 3, 1969, the two brothers were convicted of armed robbery in the Superior Court of Chatham County, Georgia, and sentenced each to a term of seven years imprisonment. The convictions were appealed to the Supreme Court of Georgia and affirmed on July 9, 1970.

Subsequently, the two brothers filed a petition for habeas corpus relief in federal district court. In that petition, the brothers alleged that the confessions used against them in state court were obtained in violation of their *Miranda* rights. The petitioners contended that because of their limited mental capacity, they were incapable of knowingly waiving their constitutional rights. As to Marvin Cooper, it was further contended that the waiver was invalid because it was obtained at a time when Marvin was in extreme pain from a gunshot wound in his leg.

The district court conducted an evidentiary hearing on the issue of whether the petitioners had knowingly waived their right to counsel. At that hearing, the petitioners called their parents and four special education teachers, who had taught the boys, to testify on their behalf. Coretha Cooper, the boys' mother, testified that both boys had been retarded since birth. She stated that she was present at the hospital when the police first questioned Marvin. According to

her story, Marvin was questioned while suffering from a gunshot wound and was given no medication to ease the pain. He was then taken to the police station and questioned further without receiving treatment for his wound. The testimony of the father, Curlie Cooper, was substantially the same as that of his wife.

The next witness called for the petitioners was Alfredia Harrison, a school teacher who had known the Cooper boys "practically all their [lives]". She testified that the boys were placed in a class for retarded children while attending the grammar school at which she taught. She further stated that she did not believe the boys would be able to understand questions such as

Do you have an attorney?

If you don't have an attorney, do you want one?

If you can't afford one, the court will appoint one, and anything you say may be used in a court of law against you.

When asked to describe the mental capabilities of the boys, she stated that they were "just beyond the hopeless" and "uneducatable".

The petitioners then called Grace Golden, a teacher of special classes for the mentally retarded employed by the Chatham County Board of Education. Mrs. Golden testified that she knew both boys because they both had been in her special classes. She stated that the level of reading comprehension of the boys was, at most, at the second-grade level, and that, in her opinion, neither boy could comprehend the *Miranda* warning. She estimated that the I.Q. of the boys was 60 or 61.

The next witness was Lloyd P. Norton, an employee of the Office of Rehabilitation Services of the State Department of Education. Norton testified that he worked with mentally retarded students in the local area and that Marvin Cooper had been one of his students. He stated that Marvin had a verbal I.Q. of 67, a performance I.Q. of 68, and a

full scale I.Q. of 64. He stated that he did not believe Marvin was capable of intelligently waiving his constitutional rights. The final witness called on behalf of the Coopers was Mr. Hinton Thomas, a Counselor at Beach Junior High School. Thomas stated that he had recommended the boys for special education classes when they first came to Beach Junior High. He stated that at that time, their level of comprehension was still only at the second- or third-grade level.

The state then proceeded with its witnesses. First called was the appointed attorney for the children in the state trial court proceedings. He testified that in the course of preparing a defense for the boys, he had conversations with them and they seemed capable of understanding these conversations. The attorney acknowledged that Mrs. Cooper informed him that Marvin's mental capacity was "something less than normal," but he made no inquiries concerning their medical background and did not raise the issue of mental incapacity in the trial court.

The other witnesses for the state were three police officers who had participated in the arrest and interrogation of the two boys. Each of these three officers testified that the two boys had each been given the *Miranda* warning prior to interrogation and that each boy appeared to understand the warning. The officers testified that the boys orally waived the right to counsel and signed written waiver forms.

## II.

■ Under the Constitution, any suspect of a crime is guaranteed the rights to assistance of counsel and to remain silent during in-custody police interrogation, and any statement obtained in derogation of those rights is inadmissible in a subsequent criminal prosecution. Miranda v. Arizona, 1966, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The suspect may, of course, waive these rights provided the waiver is knowingly and intelligently made. Johnson v.

Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. However, as the Supreme Court cautioned in Miranda v. Arizona, supra, at 384 U.S. 475, 86 S.Ct. 1628:

> If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to appointed counsel. Escobedo v. Illinois, 378 U.S. 478, 490, n. 14 [84 S.Ct. 1758, 1764, 12 L.Ed.2d 977]. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] (1938), and we reassert these standards as applied to in-custody interrogation.

■ The question presented by this appeal is whether the evidence in the record sustains the district court's determination that the "high standards of proof" for the waiver of constitutional rights were met in this case. We conclude that it does not.

We have described the testimony given at the evidentiary hearing at length, perhaps at risk of being tedious, because it demonstrates *uncontradicted* facts which leave this court no alternative but to hold that the waivers by the two boys were not knowingly and intelligently made. The record indicates that these two boys were fifteen and sixteen at the time they were taken into custody. They had no previous experience with the criminal process. Both boys were taken to the police station for interrogation. Both boys signed waiver forms and then were interrogated by the police at length. The interrogation of Marvin took place while he was suffering from a painful gunshot wound. The interrogation of Archie took place over a period of some 12 hours before he was brought before a committing magistrate.

It is undisputed that both boys were mental retardees. The boys had been placed in special education classes for

the mentally retarded throughout their entire educational careers. There was substantial uncontroverted testimony that neither boy was capable of meaningfully comprehending the *Miranda* warning. The special education teachers testified that the boys would not have understood the gravity of the charges against them, the consequences of a conviction, any defenses which might be available to them, or any circumstances which might mitigate the charges. The level of reading comprehension of the boys was not above the second- or third-grade level. The I.Q. of the boys was said to range between 61 and 67.

The evidence offered by the state in no way contradicted these salient facts. The state merely offered the testimony of the arresting and interrogating officers that the full *Miranda* warnings had been given, and of the boys' appointed counsel that the boys "appeared" to understand the situation. No effort was made to rebut the testimony of the witnesses as to the actual mental capacity of the boys.

The facts of this case are virtually identical to those in United States ex rel. Simon v. Maroney, 228 F.Supp. 800 (W.D.Pa.1964). In that case, John Simon sought habeas corpus relief from a conviction for six felonies, based upon a guilty plea given without the advice of counsel. Simon, like the Cooper brothers, suffered from extreme mental deficiency. The court noted that he had "spent his entire short school career in a special class for retarded children" and that his I.Q. was estimated to fall between 55 and 61. Like the Cooper brothers, Simon had, prior to his arrest, never been in criminal court. He was only eighteen when arrested. The state argued that Simon had been informed of the right to counsel but had waived the right. The court rejected this argument holding that the "petitioner did not and could not knowingly and intelligently waive his right to counsel".

A similar result was reached in United States ex rel. Lynch v. Fay, 184 F. Supp. 277 (S.D.N.Y.1960). In that case

the petitioner, Lynch, had an I.Q. of 74 and a mental age of 11½. There was testimony in the record by a psychologist that Lynch was a "borderline mental defective having markedly subnormal intelligence". The court held that a person with Lynch's mental deficiencies was incapable of understandingly, competently, and intelligently entering a plea of guilty to the crime of burglary without the benefit of counsel.

The Supreme Court has repeatedly emphasized that mental deficiency, age, and lack of familiarity with the criminal process are important factors to be considered in determining whether there has been a waiver of constitutional rights. In Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967), the Court held that a confession obtained from the defendant Sims was involuntary and inadmissible. The Court acknowledged that Sims had been advised of his right to remain silent but observed that:

> Petitioner had been in the continuous custody of the police for over eight hours and had not been fed at all during that time. He had not been given access to family, friends, or counsel at any point. He is an illiterate, with only a third grade education, whose mental capacity is decidedly limited. Under such circumstances the fact that the police may have warned petitioner of his right not to speak is of little significance. 389 U.S. 404, 88 S.Ct. 525.

Similarly, in pre-*Miranda* cases involving the voluntariness of confessions, the Supreme Court has emphasized that limited mental ability and unfamiliarity with the criminal process are factors which weigh heavily against the voluntariness of a confession. See, e. g., Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); cf. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

*Miranda,* of course, holds that a confession obtained without warning the suspect of his rights to remain silent and to the assistance of counsel is not

admissible. But the converse of that rule does not automatically follow. The fact that the requisite warning has been given and a waiver obtained does not bar the courts from scrutinizing the circumstances of the confession to determine whether its admission comports with constitutional guarantees. The requirement of "knowing and intelligent" waiver implies a rational choice based upon some appreciation of the consequences of the decision. See Molignaro v. Smith, 5 Cir., 1969, 408 F.2d 795. Here the boys surely had no appreciation of the options before them or of the consequences of their choice. Indeed it is doubtful that they even comprehended all of the words that were read to them. Thus, they could not have made a "knowing and intelligent" waiver of their rights. Accordingly, the confessions are inadmissible.

In so holding, we emphasize that we are not invading the fact-finding prerogative of the district court. Our decision is not based on any disagreement with the district judge as to the facts found, but on a differing legal evaluation of largely undisputed facts.[1]

### III.

In the proceedings below, the district court expressed doubt that Archie Cooper had exhausted all available state remedies within the meaning of 28 U.S.C. § 2254. However, the court made no final ruling on this question—apparently because the court had determined that neither boy was entitled to habeas relief on the merits. In view of our disposition of this case on the merits, the district court must now determine whether Archie Cooper has exhausted his available state remedies.

Thus, we remand this case to the district court with direction that the state be afforded an opportunity to retry Marvin Cooper within a time to be set by the district court. If the state fails to grant Marvin Cooper a new trial, the

writ must issue. As to Archie Cooper, we remand the case for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

1. The district judge, in his order dismissing the petition, emphasized that this was a close case which could well be decided differently.