**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thelma Jean BUSH, Defendant-Appellant.**

**No. 71-3108.**

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1972.

---

Harry Connick (Court-appointed), Connick & Connick, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Stephen L. Dunne, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and RIVES and CLARK, Circuit Judges.

RIVES, Circuit Judge:

Bush was charged with unlawfully having in her possession a $58.20 United States Treasury check payable to Mabel Loyacano, knowing that it had been stolen from the mail,[1] and with forging the endorsement of the payee on the back of said check.[2] A jury found her guilty on both counts. The court sentenced her to three years' imprisonment on each count, the sentences to run concurrently, but suspended the execution of the sentences and placed her on probation for three years. She appeals, and we affirm.

The Government proved without dispute that the check was stolen from the mail and that Bush signed the forged endorsement. Bush had confessed and had submitted handwriting exemplars which an expert found to correspond with the forged endorsement. This appeal presents for review the questions of whether the district court erred in denying her motion to suppress and in denying her motion for a judgment of acquittal. Bush alleges error in two regards: (1) that at the time of her interrogation she had been arrested without probable cause and hence all evidence flowing from that interrogation should have been suppressed, and (2) that even if she was not arrested until after she had confessed, in which event there was clearly probable cause to make an arrest, her confession and the handwriting exemplars should have been suppressed because she is a mental defective who was unable to understand her *Miranda* warnings.

Bush was first suspected in the theft of a different check, a welfare check, which had been reported stolen from the mail. Two postal inspectors called at her home and asked her to accompany them to their office to discuss the possibility of her having had possession of that check. She voluntarily complied with their request. Before questioning her they advised her of her constitutional rights and she executed a waiver of rights form. The officers found her answers, together with the information they already had as to the welfare check, insufficient to charge her with any wrongdoing.

During the course of the interview it was determined that Bush was the sister of Clyde Lamerson who had been arrested previously for possession of the Mabel Loyacano Treasury check. Bush was asked for handwriting samples of Mabel Loyacano's alleged forged endorsement. Upon providing these samples and upon being shown the closeness of them with the forged endorsement, she admitted to the possession of the Mabel Loyacano check and to forging the endorsement on that check. Bush did not at that time sign a separate waiver of rights form nor did the officers again explain her constitutional rights. Instead, because a United States Treasury check was involved, they called in two Secret Service Agents.

These agents advised Bush of her constitutional rights, had her sign another waiver form, and secured other exemplars of her handwriting and a second confession. Thereafter she was taken before a magistrate who, after apprising her of her rights, issued a complaint against her. It seems clear that Bush was not arrested until after she had confessed to one or both of the two sets of agents. Obviously, there was then probable cause for her arrest, and hence it was valid.

The only arguable ground for sustaining Bush's motion to suppress or for

---

1. In violation of 18 U.S.C. § 1708.

2. In violation of 18 U.S.C. § 495.

granting her motion for judgment of acquittal is that the respective, fact finders, the judge as to suppression *vel non* and the jury as to acquittal or conviction, were bound to accept the testimony of a psychiatrist that in his opinion: (1) Bush was a passive, dependent personality; (2) she did not fully understand her right to remain silent; (3) she did not understand that anything she said could be used against her; (4) she did not with full understanding waive her rights set out in the postal inspector and secret service forms; (5) she was in the bottom 2.2 per cent of intelectual function for the general population, her highest function was at the 6 year level and her I.Q. was 68. The psychiatrist did conclude, however, that she probably understood her right to talk to a lawyer, that a lawyer would be provided if she could not afford one, and that she could stop talking at any time to consult a lawyer. He further testified on cross-examination:

"Q. If she committed an illegal act, wrongful act, in your opinion would she have a sense of the wrongfulness of that action?

"A. It would depend on the nature of the act. You know, some acts are so commonly known to be illegal or unlawful, such as a theft, forgery, murder, arson, that sort of thing. Yes, she would understand the wrongfulness of such acts.

"Q. If she committed forgery, you are saying she would understand the wrongfulness of that?

"A. Yes."

(Tr. p. 80).

■ The psychiatrist was appointed by the court after the suppression hearing. Bush took the stand at that hearing. She testified that she was 21 years of age, had completed the tenth grade, and had done "well" in school (Tr. 7–8.) Her recollection of the events surrounding her interrogation and subsequent arrest was excellent. Bush testified that she had read her *Miranda* warnings and had executed a written waiver of rights form. She then explained that at the time she read her rights she was so nervous as to be unable to comprehend them. Later in her testimony she admitted that, even though she was also nervous when the magistrate explained her rights, she was able to comprehend them at that time. On balance we cannot say that the district judge erred in holding her confession and handwriting exemplars to be admissible. There was ample evidence from which he could find that Bush was able to and did understand her rights.

■■ Was the judge required to reverse his finding as to admissibility after having heard the testimony of the psychiatrist given during full trial? We think not. It is too well settled for discussion that expert opinion is not controlling on the judge, or for that matter on the jury. The judge, who was able personally to view the defendant under oath on the witness stand, could well have concluded that she understood her rights, notwithstanding the psychiatrist's opinion. Brawner v. United States, D. C. Cir. 1972 [No. 22,714, decided June 23; Middlebrooks v. United States, 5 Cir. 1972, 457 F.2d 657; Gordon v. United States, 5 Cir. 1971, 438 F.2d 858; Blake v. United States, 5 Cir. 1969, 407 F.2d 908.

Next we consider whether the judge should have granted the motion for judgment of acquittal. Stated otherwise, could the jurors, on the basis of the evidence before them (which did not include the testimony of Bush) conclude that her confession and the giving of exemplars was voluntary? The judge instructed the jurors at length as to their duties. He informed them that:

"If the evidence in the case does not convince you beyond a reasonable doubt that any confession or statement made by Miss Bush or any exemplar given by her were given voluntarily or intentionally you should disregard them entirely. On the other hand, if the evidence in the case does show beyond a reasonable doubt that

a statement or confession made by her was in fact voluntarily or intentionally made or that the exemplars were voluntarily and intentionally given, then you may consider those things as evidence in this case on the basis that Miss Bush then voluntarily and intentionally did those things."

(R. at 104.) He instructed that in determining voluntariness the jurors should consider Bush's age, sex, training, education, occupation, physical and mental condition, and whether she understood her *Miranda* warnings.[3] Finally, the judge told the jurors that on the facts of this case they must acquit Bush if they found the confession and the exemplars to have been involuntarily given. For absent such evidence, said the district judge, there was not sufficient evidence upon which to convict her.

■ Bush contends that the jurors should have been instructed to determine first whether she understood the *Miranda* warnings and that if they concluded she did not to disregard her confession and exemplars as involuntarily given. That is, Bush would have us regard the understanding of *Miranda* warnings as a prerequisite to, as the *sine qua non* of, a jury finding of voluntariness. We disagree. As the Supreme Court noted in *Miranda,* "In [this] case, we might not find the defendants' statements to have been involuntary in traditional terms." *Miranda, supra,* 384 U.S. 436 at 457, 86 S.Ct. 1602 at 1618, 16 L.Ed.2d 694. Thus, while *Miranda* is a prerequisite to the judge's finding of admissibility,[4] it does not play such role in the juror's determination of volun-

tariness. III Wigmore on Evidence § 861a (1970 ed.) The Tenth Circuit has recently expressed a similar rationale:

"On the issue whether the admitted statement is voluntary in fact, it is undoubtedly competent to show, as in the admissibility hearing, * * * that [the defendant] was not forewarned and advised of his rights as explicated in Miranda. In short, compliance with Miranda may very well be relevant to the factual issue of voluntariness; but, it is not prerequisite. Miranda is concerned with voluntariness in terms of admissibility—it does not undertake to prescribe the prerequisites to a jury finding of factual voluntariness.

"A jury is, of course, entitled to the guiding hand of the judge in the application of the law to the facts as they find them. And, in a proper case the jury should surely be told that if they find the defendant did not fully understand the meaning of the warning and advice given to him as stated in a confession, they may take that fact into consideration along with all the other facts and circumstances in determining the factual voluntariness of the statement, i. e., see United States v. Inman, 4 Cir., 352 F.2d 954."

Coyote v. United States, 10 Cir. 1967, 380 F.2d 305, 310.

In our view the district judge was correct in instructing the jurors that one element of voluntariness was whether Bush understood her *Miranda* rights. Even though they may have determined that she did not understand those rights, they nonetheless could have concluded that her confession was voluntary.[5]

---

3. The Record does not reveal that the jurors were aware of Bush's educational background. Although the judge knew that she had completed the tenth grade, the jurors did not. Bush did not testify at the trial, and the prosecution did not introduce any evidence as to her educational background.

4. Although the Court stated that a confession given without benefit of the *Miranda* warnings was not "involuntary" in the traditional sense, it is nonetheless "absolutely" inadmissible. *Miranda, su-*

*pra,* 384 U.S. at 471, 86 S.Ct. 1602. But see 18 U.S.C. § 3501.

5. In Cooper v. Griffin, 5 Cir. 1972, 455 F.2d 1142, there was strong evidence that the defendants were not mentally capable of understanding their *Miranda* rights. In the face of substantially uncontroverted testimony that the defendants lacked the capacity to understand those rights, the trial court found the confessions to be admissible. That case was tried without a jury. We reversed. There is a telling distinction between that

There was no evidence that she had been abused in any way. Since the jurors could, and apparently did, determine that Bush had confessed and given handwriting exemplars voluntarily, they could rightfully convict her. The judge did not err in denying the motion for acquittal.

Affirmed.

case and the one here under scrutiny. As we have noted above, the trial judge must consider *Miranda* as prerequisite to admissibility. In *Cooper* the trial court had no evidence that the defendants understood their rights. Hence the court erred in admitting the evidence. In the present case there was evidence at the suppression hearing (namely Bush's own testimony) from which he could find that the defendant was capable of understanding her rights.

However, the evidence before the judge in *Cooper* is substantially like that before the *jury* on the trial of this case. That is, absent the testimony of Bush herself there is little distinction between the evidence introduced in *Cooper* and that presented in this case. Thus it would seem that, even though the district judge did not err in finding that Bush had understood the *Miranda* warnings, the jurors could not similarly conclude because they did not have the benefit of Bush's testimony. Even assuming that on the evidence before them the jurors were compelled to believe that Bush did not understand her *Miranda* rights, they were not compelled to disregard her confession and the handwriting exemplars as involuntarily given. We reiterate that although a defendant's understanding of the *Miranda* warnings may be the *sine qua non* of a judge's finding that a confession is admissible into evidence, it is not prerequisite to a jury finding of voluntariness in fact.