**UNITED STATES of America**

v.

**Pedro ROBLES–RAMIREZ**

**No. DR 99–CR–735–WWJ.**

United States District Court,
W.D. Texas,
Del Rio Division.

April 6, 2000.

Bill Reid, for U.S.

Frank Morales, for Defendant.

## MEMORANDUM OPINION

JUSTICE, Senior District Judge.

Defendant in the above-entitled and numbered criminal action has filed a motion to suppress evidence. A two-day hearing was conducted on March 6, and March 7, 2000. The defendant's and government's evidence having been duly considered, defendant's motion will be granted in accordance with the reasoning presented below.

### Background

The defendant, Pedro Robles Ramirez ("Robles"), currently stands charged by indictment with possession with the intent to distribute marijuana. The uncontested facts are as follows. On October 31, 1999, a large group of individuals were seen near the Rio Grande River, on the American side, approximately 11 miles west of Eagle Pass, Texas. Some were seen carrying bundles. As agents with the Border Patrol approached, the group scattered and dropped the bundles. Agents later found Robles hiding in some brush close to where the bundles were found. He was found lying on the ground, partially covered by debris. Robles was taken into custody and to the Eagle Pass Border Patrol Station. The government maintains that while at the station, Robles received his *Miranda* rights at least twice and voluntarily gave a statement admitting participation in the criminal scheme. The defense makes the following assertions: first, that Robles' *Miranda* rights were not adequately conveyed the first time they were given, rendering his first waiver of those rights invalid; second, that the second waiver given by Robles after having received his rights a second time was not made knowingly or intelligently; and, third, that Robles' written statements were not voluntary. For these reasons, Robles seeks to suppress all statements unlawfully seized from him after his apprehension, and any evidence obtained as the result of those statements. Each of defendant's contentions will be addressed in turn.

### Miranda: Take One

Upon his arrival to the Eagle Pass Border Patrol Station, the defendant was led in handcuffs by Border Patrol Agent Ned Thomas to a small room. While in the small room, Agent Thomas removed the handcuffs from the defendant and handed him a "form I–214," detailing his *Miranda* rights in Spanish. Agent Thomas testified that after the defendant had been given sufficient time to read the form, the agent read in Spanish a single line which may be roughly translated to mean, "I have read (or had read to me) this declaration about my rights and I comprehend them," drew an "x" on the signature line to indicate where the defendant was to sign, and

asked the defendant to sign. The defendant then signed.

Robles contends that although he signed beneath a phrase connoting his understanding of *Miranda*, his rights were in fact not adequately conveyed to him because he cannot read, and because Agent Thomas did not read his rights aloud. Agent Thomas testified that he sometimes reads the rights listed on the form I–214 to suspects in his custody, but was "pretty sure" that he did not read them to Robles. Based on his testimony, and on the defendant's assertion that he was not read his rights by Agent Thomas, it is found that the defendant was not read his rights, but was instead left to read them.

But *did* he read them? It is noted, first, that at no time did Agent Thomas ask Robles if he could read. Indeed, as Agent Thomas repeatedly testified, he does not routinely ask this question of a suspect unless the suspect himself first suggests that he is illiterate. Second, although the agent testified that he believed defendant to have understood his rights, he also testified that he could not recall having seen the defendant in the act of scanning or reading the words on the I–214 form. Third, Pete Cordova, an investigator employed by the Office of the Federal Public Defender, testified that the defendant did not recognize any of a number of simple Spanish words when those words were presented to him in written form—a fact highly suggestive of his illiteracy. Finally, Betsy Bouton Puentes, Psy. D., who performed extensive psychological and neurological testing of Robles, testified that, although she had not specifically tested his ability to read Spanish, it would be highly unlikely, in her view, for Robles to have developed the ability to read.[1] Based on

this testimony, virtually uncontroverted by the government, it is found that the defendant could not and did not read his *Miranda* rights.

 Under *California v. Prysock,* 453 U.S. 355, 360–61, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), *Miranda* rights must be reasonably conveyed. Even though the courts tend to recognize that language barriers may inhibit a suspect's ability to knowingly and intelligently waive his or her Miranda rights, or may affect the adequacy of the warnings, a waiver may be valid if a suspect's rights were explained in his or her native language and the suspect claimed to understand such rights. *United States v. Boon San Chong,* 829 F.2d 1572, 1574 (11th Cir.1987). Here, the defendant's native language was spoken Spanish, and did not include the ability to read or write. Since he did not hear of his rights, it follows that his rights were not adequately conveyed. His signature of "understanding" most likely resulted from a willingness to follow instructions[2], misunderstanding of agent Thomas' Spanish[3], or a combination thereof. Regardless of what caused him to so sign, the evidence at the hearing overwhelming demonstrated the impossibility of the defendant's having read, or having been read, his rights.

Given that the defendant's rights were not adequately conveyed, it cannot be said that the waiver, or "Renuncia," which followed was knowing or intelligent. In *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), the Court discussed two distinct criteria for determining whether a waiver was voluntary, knowingly, and intelligently entered. *Moran,* 475 U.S. at 421, 106 S.Ct. 1135. First, the waiver of the right must have

---

1. Dr. Puentes' findings relating to Robles' mental capacities will be discussed in more detail below, at page 7.

2. Dr. Puentes testified at length about the willingness to follow instructions possessed by defendant and many other persons with mild mental retardation.

3. It is noted that the official court interpreter, Ricardo Nance, felt obligated to relate to the court that Agent Thomas' ability to speak Spanish was to some degree inadequate, as he himself could not understand some of the agent's Spanish as spoken from the witness stand.

been voluntary, in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. *Id.* Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* In relation to the waiver obtained by Agent Thomas, only the second of these criteria is at issue.

■ The prosecution generally has the burden of proving by a preponderance of the evidence that the Miranda warnings were adequate. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Agent Thomas testified that after Robles signed by the first "x," he then read the waiver provision to Robles aloud, in Spanish, again drawing an "x" and securing Robles' signature. Simply put, this signature did not constitute a knowing or intelligent waiver because, having not read or been read his rights, the defendant did not know what he was waiving. It is further found that the defendant likely did not even realize that his signature was an act of waiver at all, as there is reason to believe that Agent Thomas' reading of the "Renuncia" to defendant in Spanish was less than clear and articulate.[4] Finally, Agent Thomas' impression that Robles in fact understood his act of waiver does not appear to be reliable or accurate, as the agent apparently also was under the impression that Robles "understood" his *Miranda* rights, even though he had not read those rights or had them read to him.

■ For the above reasons, it appears necessary to suppress Robles' statements to Agent Thomas for lack of a knowing and intelligent waiver of his *Miranda* rights. However, one question of law remains, at this point, unresolved. As is discussed below in greater detail, under *Connelly,* a

finding that a waiver is involuntary may not be made absent police coercion. Left unresolved by *Connelly,* however, is the issue of whether the voluntariness standard requiring coercion leaves intact the possibility that a voluntary *Miranda* waiver may be invalid if it is not knowing and intelligent. Decisions by the Ninth, Seventh, and D.C. Circuits hold that the knowing and intelligent requirement remains unaltered subsequent to *Connelly. Derrick v. Peterson,* 924 F.2d 813, 820–21 (9th Cir.1990) ("Whatever doubt remained after *Connelly* concerning the distinct nature of the knowing and intelligent prong of the waiver inquiry was removed by the Court's decision in *Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987)."); *Rice v. Cooper,* 148 F.3d 747 (7th Cir.1998); *United States v. Bradshaw,* 935 F.2d 295, 298–300 (D.C.Cir.1991); *see also People v. Bernasco,* 138 Ill.2d 349, 562 N.E.2d 958, 150 Ill.Dec. 155 (1990) (*Miranda* waiver must be knowing and intelligent as well as constitutionally voluntary in order to be admissible). On this authority, it is clear that a distinction must be made between a waiver not knowingly and intelligently effected, which is invalid even if not the result of any police misconduct, and an involuntary waiver, invalid only if it is the result of such misconduct. In this case, only the former has been presented for adjudication.

In consideration of the foregoing, it is concluded that the statements made by the defendant to Agent Thomas and Agent Ian Smelser, a second agent who briefly questioned the defendant after his encounter with Agent Thomas and before any additional warnings were given, should be suppressed.

### *Miranda: Take Two*

After about four additional hours in custody, Robles was transported by Agent

---

4. *See* footnote 3, *supra.* In addition to the fact that the defendant had not been read his rights, and may have had difficulty understanding Agent Thomas' rendition of the waiver provision, it is questionable whether the defendant had the ability to understand and

apply the abstract concept of waiver. This concern, which functions only as third layer of concern in the analysis of the defendant's first waiver, becomes central to the treatment of the defendant's second waiver, discussed, *supra,* at page 765.

Fernando Jemente to the Resident Office of the Drug Enforcement Administration. Agent Jemente testified that he read the defendant his *Miranda* rights from a second "Interrogatorio" form, including a "Renuncia" or waiver of those rights. He, like Agent Thomas, then placed an "x" on the signature line for defendant, who in turn signed the document, waiving his *Miranda* rights. A second agent signed as a witness. According to Agent Jemente's testimony, all of these events transpired in less than one minute, as both the starting and ending times for his interview with the defendant were recorded as 7:30 A.M. Robles argues that his mental disability, coupled with the rapid-fire reading of his rights, rendered his waiver of those rights unknowing and unintelligent.

As noted above, the waiver of *Miranda* rights must be voluntary, knowing, and intelligent. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). If an interrogation continues after the reading of *Miranda* rights without the presence of an attorney and a statement is taken, the government has the burden of demonstrating that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Miranda*, 384 U.S. at 475, 86 S.Ct. 1602. There is a presumption against waiver. The government's burden to make such a showing "is great," and the court will "indulge every reasonable presumption against waiver of fundamental constitutional rights." *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir.1984) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). In assessing the validity of a waiver of *Miranda* warnings, the Supreme Court applies a "totality of the circumstances" test. *Id.* Because the defendant claims that he did not understand the rights and waiver provisions which were read to him by Agent Jemente, an evaluation of the totality of the circumstances of

this case must necessarily include an inquiry into the defendant's mental capabilities.

Defendant Robles is a 36-year-old citizen of Mexico. He speaks only Spanish. He can neither read nor write. He claims to suffer from a condition that triggers extreme stuttering when he is presented with stressful situations, which results in a marked inability to communicate under pressure. Dr. Puentes, who testified to the results of her various testings of defendant, found him to have an estimated intelligence quotient of 66, with an age-adjusted quotient of 72. She provisionally diagnosed defendant with mild mental retardation. She noted that he does not recognize letters of the alphabet, functions at a second-grade level in arithmetic, and functions at a pre-school level in literacy. She added that his ability to comprehend abstract concepts is reduced due to his neurological impairment, and opined that he would not have been able to understand the abstract concepts contained in the version of his *Miranda* rights read by Agent Jemente without considerable repetition and careful clarification. In particular, she stated that it would not have been possible for Robles to have understood what was read to him in under one minute's time. Dr. Puente highlighted that, after her review of what had been read to the defendant, the abstract idea of waiving one's rights "knowingly, intelligently, and voluntarily," in particular, would not have been comprehended by him without added explanation or repetition. This testimony was not rebutted by the government.

Furthermore, defense counsel elicited credible testimony, including evidence—largely if not completely unrefuted by the government—that the defendant does not know the meanings of certain key words contained in the rights explication section of the "Interrogatorio." Among the words that defendant did not recognize after they were verbalized to him in Spanish were: "emplear" (to employ), "consciente" (conscious, aware), "durante" (during), "juzgado" (judged or court), and "leyes" (laws).

The Fifth Circuit has held that limited intellectual ability factors into the determination of whether a suspect made a valid waiver. *Cooper v. Griffin*, 455 F.2d 1142, 1145 (5th Cir.1972); *cf. Henry v. Dees*, 658 F.2d 406 (5th Cir.1981). The defendants in *Cooper* were teenagers with no prior contact with the criminal justice system, their IQs were between 61 and 67, they read at a second-grade reading level, and "(t)here was substantial uncontroverted testimony that neither boy was capable of meaningfully comprehending the *Miranda* warning." *Id.* at 1144–45. The court in *Cooper* underscored the importance of comprehension as it relates to waiver:

> The requirement of "knowing and intelligent" waiver implies a rational choice based upon some appreciation of the consequences of the decision. . . . Here [the defendants] surely had no appreciation of the options before them or of the consequences of their choice [to sign waivers]. Indeed it is doubtful that they even comprehended all of the words that were read to them. Thus, they could not have made a "knowing and intelligent" waiver of their rights.

*Id.*, at 1145. *See also United States v. Garibay*, 143 F.3d 534 (9th Cir.1998) (defendant's borderline retardation and inability to understand oral instructions among prerequisite skills for knowing and intelligent waiver).

■■■ The government notes correctly that in order to find a valid waiver of *Miranda*, the court need not find that the defendant had "a full and complete appreciation of all of the consequences flowing from the nature and the quality of the evidence in the case." *Oregon v. Elstad*, 470 U.S. at 317, 105 S.Ct. at 1297. Similarly, it is well-established that mental retardation does not, by itself, render a defendant incapable of waiving *Miranda*. *See, e.g., Toste v. Lopes*, 701 F.Supp. 306, 313 (D.Conn.1987) (statements of mildly retarded defendant would not be suppressed where psychological testimony did not indicate that defendant was unable to comprehend sufficiently the rights set forth in *Miranda* ). However, in this case, virtually uncontroverted[5] evidence as presented showing that the defendant could not have understood many of the words central to the content of the rights read to him, and, additionally, that he lacked the mental capability to understand many of the concepts at the heart of *Miranda* — including the idea of waiver itself—within the time frame in which those concepts were presented to him. It is recalled, further, that the defendant's ability to understand *Miranda* under ideal circumstances is not at issue. Instead, what must be considered are his abilities and intelligence under the circumstances which transpired, which involved both pressure and haste. *See, e.g., Smith v. Kemp*, 664 F.Supp. 500 (M.D.Ga.1987).

■■■ For the reasons explicated above, it is found that, given the totality of the circumstances, Robles' second waiver of his *Miranda* rights was neither knowing nor intelligent. Those factors to which the court affords due weight include the defendant's extreme lack of education; his unfamiliarity with key words contained in the warning; his mental retardation; his ina-

---

5. The government's agents, Thomas and Jemente, both testified that Robles appeared to understand his rights at the time he received them. However, these subjective impressions do not bear heavily on the court's evaluation of Robles' comprehension of his rights under *Miranda*, for several reasons. First, agent Thomas' contention that Robles understood his rights was directly controverted by clear evidence that he is in fact illiterate. Second, both agents admitted to not having been trained to recognize indicia of understanding by suspects who are orally receiving their rights. Third, the testimony offered by defendant's qualified expert, Dr. Puentes, that defendant could not possibly have understood his rights under the circumstances in which they were delivered by Agent Jemente is found to be wholly reliable, based on her extended testing of defendant, her familiarity with his particular form of cognitive disability, and her general credibility as an expert witness.

bility to understand, without repetition and clarification, the concepts implicit in *Miranda* warnings; the haste with which his rights were read and his waiver made; and his total lack of familiarity with the criminal justice system of Mexico or of the United States.[6]

### The Statements—Voluntariness

The waiver of defendant's *Miranda* rights having been found invalid, the defendant's written statement made to Agent Jemente should be suppressed.[7] However, it is significant that, even had the defendant's waiver been valid, the manner in which his subsequent written statement was taken by Agent Jemente suggests that it may not have been voluntarily made.

▮▮▮ The critical element in determining whether a statement was involuntarily given is the element of police overreaching. *Colorado v. Connelly*, 479 U.S. 157, 163–64, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *see also United States v. Raymer*, 876 F.2d 383, 386 (5th Cir.1989). In *Connelly*, a mentally ill person approached the police and spoke about his having murdered someone. The police advised him of his rights and then listened as the person continued to talk. The Supreme Court held that the confession given by *Connelly* was admissible, since the police had not engaged in any coercive conduct. *Id.* at 167, 107 S.Ct. 515.

▮▮▮ A court determines the issue of voluntariness under the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A confession by a person of limited intelligence is more likely to be involuntary. *See, e.g., Sims v. Georgia*, 389 U.S. 404, 407, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967); *Fikes v. Alabama*, 352 U.S. 191, 196, 77 S.Ct. 281, 1 L.Ed.2d 246

(1957). Mental disability and unfamiliarity with the criminal process are factors which weigh heavily against the voluntariness of a confession. *Cooper v. Griffin*, 455 F.2d 1142, 1145 (5th Cir.1972). The general rule in the Fifth Circuit is that the fact that a confession is made by one whose mentality is subnormal is to be taken into consideration and viewed as a fact indicating, although not establishing, that the confession was lacking in voluntariness. *See Sanchez v. Beto*, 467 F.2d 513 (5th Cir.1972); *Cooper v. Griffin*, 455 F.2d 1142 (5th Cir.1972); *Lathers v. United States*, 396 F.2d 524 (5th Cir.1968); *Molignaro v. Smith*, 408 F.2d 795 (5th Cir.1969). At the same time, the Fifth Circuit has powerfully stated the importance of this factor:

> When persons of markedly limited mental ability ... are questioned without the aid of counsel, issues 'of suggestibility and possible overreaching are raised ... and must be factored into a consideration of the totality of the circumstances.' *Jurek v. Estelle*, 623 F.2d 929, 938 (5th Cir.1980). Extra precautions must be taken. It must be painstakingly determined that they comprehend what events are transpiring.

*Henry v. Dees*, 658 F.2d 406, 411 (5th Cir.1981).

Evidence of overreaching in this case includes the fact that Agent Jemente originally wrote in his report that Robles had provided a "written statement," though he later conceded that he himself had listened to Robles' statement in Spanish, written it down in English, read it back to Robles in Spanish, and then had asked Robles to initial the statement. Defense counsel asserts that Agent Jemente's having termed the confession a "written statement" by Robles is a form of misrepresentation suggesting, perhaps, an element of over-

---

6. For additional discussion about this last factor concerning the defendant's unfamiliarity with the criminal justice system, *see, e.g., U.S. v. Glover*, 596 F.2d 857, 866 (9th Cir.1979); *Cooper*, at 1145; *Garibay* at 538.

7. Agent Jemente testified that he did not read the *Miranda* warnings and waiver provisions which appear on the written statement itself. Therefore, the possibility of a third waiver by defendant at the time he made the statement will not be considered.

reaching. This bit of mischaracterization on the agent's part, viewed by itself, is not a persuasive indication of coercion or over-reaching.

Far more disquieting, however, is Dr. Puentes' finding that defendant was not able to define words like "agent," "tripped," and "station," when these terms were spoken to him in Spanish, even though these words formed the crux of the statement he allegedly authored. This circumstance is particularly disturbing, given the fact that Agent Jemente testified that he directly translated *Robles'* words and not his own.

While such evidence could support a finding of coercion under *Connelly*, the need for such a finding is obviated by the court's having suppressed the statement for lack of a valid waiver. It is further noted—again, parenthetically—that even had Agent Jemente's interaction with the defendant not amounted to overreaching under *Connelly*, the testimony at trial so thoroughly demonstrated the disparity between the language used in defendant's so-called "statement" and his actual capacity for language that the statement would likely not be admissible at trial for the simple reason that it is does not appear to be *his* statement.

The statements of defendant having been duly suppressed in accordance with the reasoning set forth above, the issue of the failure to advise the defendant of his rights under the Vienna Convention will not be reached.