**UNITED STATES of America, Appellee,**

v.

**MALE JUVENILE (95–CR–1074),
Defendant–Appellant.**

No. 1364, Docket 96–1637.

United States Court of Appeals,
Second Circuit.

Argued May 1, 1997.

Decided July 28, 1997.

David N. Sherman, Bayside, NY (Steve Zissou, Bayside, NY, of counsel), for Defendant–Appellant.

Timothy Macht, Assistant United States Attorney, Eastern District of New York (Zachary W. Carter, United States Attorney for the Eastern District of New York, Peter A. Norling, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY, of counsel), for Appellee.

Before: MESKILL and NEWMAN, Circuit Judges, and McAVOY, District Judge.*

MESKILL, Circuit Judge:

In this appeal we must decide whether a juvenile knowingly and voluntarily waived his rights set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before confessing to taking part in a robbery within the territorial jurisdiction of the United States. Defendant, a juvenile, appeals from a judgment of conviction in the United States District Court for the Eastern District of New York, Korman, *J*. Defendant was charged with theft of property by force and violence within the territorial jurisdiction of the United States in violation of 18 U.S.C. § 2111 after confessing to government authorities that he was a "lookout" during the commission of a robbery on the Fort Hamilton United States Army Base in Brooklyn, New York. Because defendant was under the age of eighteen during the commission of the crime, the government proceeded against defendant under the Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5042. Before trial, defendant moved to suppress his confession. The motion to suppress was referred to Magistrate Judge Joan M. Azrack who, after an evidentiary hearing, recommended denying the motion. Defendant never filed an objection to the magistrate judge's report. At a bench trial, the district court reviewed the motion to suppress *de novo* and denied the motion. Based primarily on defendant's confession, the district court found defendant guilty of the crime charged. The district court adjudicated defendant as a juvenile delinquent and sentenced him to probation. *See* 18 U.S.C. §§ 5031, 5037(b). On appeal, defendant contends that the district court erroneously denied the motion to suppress his confession and that, therefore, his conviction should be reversed. We disagree and affirm the judgment of the district court.

## BACKGROUND

*District Court's Findings of Fact*

The following is a summary of the district court's findings of fact. In October 1995, two

* Honorable Thomas J. McAvoy, Chief Judge of the United States District Court for the Northern District of New York, sitting by designation.

men, one of whom was armed, robbed a Burger King restaurant located on the Fort Hamilton United States Army Base in Brooklyn, New York. The men held the restaurant's manager at gunpoint and stole $1,083 from a safe in the manager's office. Military Police (MP) Investigator Michael Canter responded to the scene and noticed defendant, then a sixteen year old juvenile, standing outside the Burger King with several friends.

Canter initially met defendant several weeks before the robbery when defendant sought Canter's help. On that occasion, defendant and his family met with Canter and asked if he could protect defendant from gang-related violence. At that meeting, defendant supplied Canter with information about local gang-related activity, and Canter agreed not to use this information against defendant. After that meeting, Canter considered defendant a confidential informant.

On the night of the robbery, Canter approached defendant and jokingly said, "That's it, get to the station." Defendant apparently did not understand the remark as a joke and proceeded to the MP station. When Canter arrived back at the MP station, he was surprised to find defendant there. Canter used the opportunity to ask defendant if he could gather any information about the robbery. Five days later, Canter asked defendant to meet him at the station to disclose any information he had collected concerning the robbery. Defendant agreed and returned to the station on the same day.

Canter and Anthony Hernandez, also an MP investigator, brought defendant to an interview room. Both Canter and Hernandez informed defendant that "he was just there for information gathering purposes," and that he was not in trouble. Some time during the interview, both investigators were required to assist in an unrelated matter and left the room. Defendant was asked to wait in the hallway, at which time he telephoned his mother and asked her to come to the station. When defendant's mother arrived at the station, Canter and Hernandez assured her that defendant was not in trouble. Hernandez also asked her to agree to permit the detectives to interview defendant outside her presence. She agreed and remained in the hallway during the interview.

When the interview resumed, Federal Bureau of Investigation (FBI) Special Agent Anthony Nelson, who was also investigating the robbery of the Burger King, joined Hernandez and another MP and sat behind defendant while Hernandez began asking defendant for information about the robbery.[1] While Hernandez questioned defendant, Nelson observed that defendant "was beginning to cry" and "was hesitant to respond to some of the questions which were just of a general nature." Nelson testified that, based on these observations, "it occurred to me that he probably may have had some role in the robbery and I decided I was going to read him his rights and take over the interview." At that point, Nelson moved his chair in front of defendant, informed him that he was an FBI agent, and showed defendant his credentials. Nelson then explained defendant's *Miranda* rights by stating that defendant "didn't have to say anything to [Nelson], [and] that whatever he said could be used against him." Nelson also informed defendant that he was entitled to a lawyer, and that if he could not afford a lawyer, Nelson could arrange to have a lawyer appointed to represent defendant. When asked if he understood his rights, defendant answered in the affirmative. In addition, Nelson told defendant that he could step out into the hallway and speak to his mother. Defendant declined the invitation to speak to his mother.

During this explanation of defendant's rights, Agent Nelson also explained to defendant that "no matter what he said to me, that he was going to be allowed to leave that evening." Nelson admitted that he made this promise in part "to get [defendant] to open up and speak to [him]."[2]

---

1. Canter testified that he was working on another case during the questioning of defendant and was coming in and out of the interview room at that time.

2. Nelson also testified that he made the statement because he believed it was true. Apparently relying on 18 U.S.C. § 5032, Nelson testified that he made the statement because he believed that he could not arrest defendant without autho-

Using an FBI "Interrogation and Advice of Rights" form, Nelson then formally read defendant his *Miranda* rights, stopping after each right was read and asking defendant if he understood it. Defendant indicated he understood his rights and Nelson and Hernandez both testified that defendant showed no sign of confusion. Nelson then asked defendant if he was still willing to answer questions, and defendant agreed he was. Nelson also testified that, after he gave the FBI form to defendant, defendant appeared to read the form before signing it. According to Nelson, defendant then told the detectives that he had acted as a "lookout" during the robbery. Defendant also provided the detectives with the names of other participants in the robbery.

After defendant confessed to his role in the robbery, the investigators permitted defendant to go home with his mother. However, defendant was arrested several days later and charged with theft of property by force and violence within the territorial jurisdiction of the United States in violation of 18 U.S.C. § 2111.

*Motion to Suppress*

Before trial, defendant moved to suppress his confession on the grounds that he did not knowingly and voluntarily waive his *Miranda* rights and that his confession was given involuntarily. The motion to suppress was referred to Magistrate Judge Azrack pursuant to 28 U.S.C. § 636(b)(1)(B) for a hearing and a report and recommendation.

At that hearing, Detectives Canter and Hernandez and FBI Agent Nelson testified to the events surrounding defendant's confession. The defense called defendant's mother, who testified that defendant had been in special education since first grade and that his reading comprehension was at a second grade level. Defendant's mother admitted that her son never complained to her that he was confused during the questioning that led to his confession.

Based on the testimony of all the witnesses, defendant argued that his learning and comprehension disabilities, combined with the coercive nature of the interrogation and promises of leniency, rendered his confession and waiver of his *Miranda* rights unknowing and involuntary. The magistrate judge disagreed and recommended that the motion to suppress be denied. The magistrate judge found that (1) defendant was not in custody when he confessed, and (2) the defendant's waiver and confession were given knowingly and voluntarily. The magistrate judge recommended, therefore, that the motion to suppress be denied. At the conclusion of the magistrate judge's Report and Recommendation, the magistrate judge warned the parties that "[a]ny objections to this Report and Recommendation must be filed with the Clerk of the Court ... within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order." Defendant never objected to the magistrate judge's recommendation to the district court.

However, rather than simply accepting the findings of fact and recommendation of the magistrate judge without review, the district court considered anew the motion to suppress. The court conducted a non-jury trial but, before deciding the guilt or innocence of defendant, redetermined the admissibility of the confession. The court heard testimony from Canter, Hernandez and Nelson on the events surrounding the robbery and confession. The district court also heard the testimony of defendant's mother regarding defendant's learning and comprehension disabilities.

Based on this evidence, the district court decided that the confession was admissible. The court first ruled that, contrary to the magistrate judge's recommendation, defendant was in custody at the time he confessed. The court determined that once Agent Nelson moved his chair in front of defendant, showed defendant his badge and told defendant that he could leave that evening, defendant's status as an informant changed. The court ruled that, at that point, a reasonable person would "conclude that he was not then

rization from the Attorney General. 18 U.S.C. § 5032 (juvenile delinquent cannot be proceeded

against in any court of the United States without certification from the Attorney General).

free to leave." [3] However, the district court agreed with the magistrate judge that defendant knowingly and voluntarily waived his *Miranda* rights and voluntarily confessed, and therefore ruled that the confession was admissible.

### The Verdict and Sentence

The district court then decided that defendant's confession, along with other evidence, was sufficient to convince the court that defendant was guilty of the crime charged. At sentencing, the court ordered a psychological observation of defendant by a psychiatrist pursuant to 18 U.S.C. § 5037(d) (if court needs more detailed information concerning an adjudicated delinquent, court may order observation and study of juvenile). The psychiatrist concluded that defendant suffered from attentional difficulties, including a provisional diagnosis of Attention Deficit Hyperactivity Disorder, and other "learning problems." The psychiatrist also determined that defendant had a "borderline to low average range of intellectual functioning with a Full Scale IQ of 71" and read at the second grade level. This diagnosis was confirmed by a second doctor who evaluated defendant.

After considering defendant's condition, the district court placed defendant on probation until July 4, 2000. As part of the conditions of the probation, defendant was required to submit for evaluation of developmental disabilities, participate in special education programs, participate in treatment for learning disabilities, and participate in vocational training.

### DISCUSSION

On appeal, defendant contends that the district court erroneously denied the motion to suppress his confession. Specifically, defendant argues that (1) he was incapable of knowingly waiving his *Miranda* rights, (2) the government's conduct caused defendant to involuntarily waive his *Miranda* rights and involuntarily confess, and (3) the trial court improperly placed on defendant the burden of proving his confession was made involun-

tarily. We affirm the judgment of the district court.

### Failure to Object to Magistrate's Report and Recommendation

■ Before reaching the merits of this appeal, we comment on whether defendant's failure to object to the magistrate judge's Report and Recommendation waives any right to appellate review of the admissibility of his confession. Section 636(b)(1)(B) of the Federal Magistrates Act provides that a district judge may "designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of [among other things, a motion to suppress evidence in a criminal case]." The Act also provides that, within ten days after being served with the report and recommendation, any party may object to the findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1). If an objection is filed within ten days, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* Otherwise, the district court can adopt the report without making a *de novo* determination.

■ Although the Act does not, on its face, condition appellate review on timely objections, the Supreme Court has held that "a court of appeals may adopt a rule conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections with the district court identifying those issues on which further review is desired." *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985). We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object. *IUE AFL–CIO Pension Fund v. Herrmann,*

---

**3.** The government does not contest the district court's finding that defendant was in custody

while Agent Nelson questioned defendant.

9 F.3d 1049, 1054 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam). The rule is enforced under our supervisory powers and "is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993).

The waiver rule promotes judicial economy by "prevent[ing] a litigant from 'sandbagging' the district judge by failing to object and then appealing." *Thomas,* 474 U.S. at 148, 106 S.Ct. at 471. Absent such a rule, we would be forced "to consider claims that were never reviewed by the district court," or the district court would "review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied with the magistrate's report. Either result would be an inefficient use of judicial resources," *id.* at 148, 106 S.Ct. at 471, and the later result would undermine "Congress' desire to give district judges 'additional assistance' in dealing with a caseload that was increasing far more rapidly than the number of judgeships," *id.* at 152, 106 S.Ct. at 473.

In the present case, defendant failed to object to the magistrate judge's recommendation that the motion to dismiss be denied, and this failure could be a waiver of his right to appellate review. However, because we find that the purposes of the waiver rule are not advanced in the present case, we will permit appellate review.

Although defendant did not object to the magistrate judge's recommendation, it is clear that the district court did not consider the confession issue waived. The record indicates that the district court made a *de novo* determination of the Report and Recommendation after essentially conducting another hearing on the issue. The court then accepted one part of the magistrate's analysis while rejecting other parts. The court's review was well within its discretion. *See Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989) ("Even if neither party objects to the magistrate's

recommendation, the district court is not bound by the recommendation of the magistrate."). In this case, then, we are not forced to consider claims never reviewed by the district court, nor was the district court forced to consider an issue never objected to by the parties. Because the purposes of the waiver rule are not advanced when the district court has reviewed the magistrate judge's Report and Recommendation *de novo,* we will disregard the procedural default rule and reach the merits of this case. *See Thomas,* 474 U.S. at 158, 106 S.Ct. at 476 (Stevens, *J.,* dissenting) ("When the district court elects to exercise its power to review a magistrate's report *de novo* and renders an opinion resolving an issue on the merits, there is no danger of 'sandbagging' the district judge," and strict compliance with the rule is unnecessary.).[4]

*Admissibility of Confession*

On appeal, defendant contends that the district court erroneously denied the motion to suppress his confession because (1) he was incapable of knowingly waiving his *Miranda* rights, (2) the government's conduct caused defendant to involuntarily waive his *Miranda* rights and involuntarily confess, and (3) the trial court improperly placed on defendant the burden of proving his confession was involuntary. We disagree and affirm the judgment of the district court.

We review *de novo* the question of a defendant's knowing and voluntary waiver of his *Miranda* rights. *United States v. Villegas,* 928 F.2d 512, 518 (2d Cir.1991). "The government is required to prove waiver by a preponderance of the evidence, and the clearly erroneous standard applies to the assessment of factual issues relating to the waiver." *Id.* at 518–19 (citation omitted). "To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jas-*

---

4. We note that our research has uncovered no cases in this Circuit applying the waiver rule in criminal cases. *See United States v. Vega,* 678 F.2d 376, 379 (1st Cir.1982) (extending waiver rule to criminal cases). However, because we disregard the waiver rule in this case, the issue of whether the rule should be enforced equally in criminal cases need not be reached today.

*wal*, 47 F.3d 539, 542 (2d Cir.1995) (per curiam). Only if the totality of the circumstances "reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *See Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986).

### 1. *Knowing Waiver of Miranda Rights*

■ Defendant first argues that the government has not proven by a preponderance of the evidence that he knowingly waived his rights set forth in *Miranda*. More specifically, defendant contends that both his mother's testimony of his mental disabilities and the psychological test results undermine the government's evidence that he knowingly waived his *Miranda* rights. We reject this argument.

The government's evidence showed that FBI Agent Nelson first explained to defendant his right to remain silent and his right to an attorney. The defendant stated that he understood his rights and, after this informal notification, Nelson then read defendant's rights from an FBI form, stopping at each stated right to determine if defendant understood it. The defendant again stated that he understood his rights and signed the waiver form before confessing to his involvement in the robbery. Both Hernandez and Nelson testified that defendant exhibited no sign that he did not understand his rights. In addition, defendant's mother testified that defendant never told her that he was confused during the interrogation. The magistrate judge and district court credited this testimony and defendant does not contest this finding.

Instead, defendant contends that the evidence of his attentional and learning difficulties proves that he was incapable of understanding and, therefore, knowingly waiving his rights. We note that at the suppression hearing and at trial the only evidence of defendant's learning and attentional difficulties was his mother's testimony regarding defendant's math and reading skills. In addition, defendant's mother also testified that defendant had problems speaking. The psychological tests relied on by defendant in this appeal were not before the district court at any time before its decision on the motion to suppress. Instead, these tests were performed during the sentencing phase of the case and we need not consider them in determining the admissibility of the confession.

However, even if we were to consider the psychological reports along with the mother's testimony of defendant's mental disabilities, we still would reject defendant's argument as to competency. The evidence of defendant's disabilities does not show that defendant was so incompetent that he was not aware "both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987) (quotation omitted). Although his mother's testimony and the psychological reports indicate that defendant has a host of attentional and learning disabilities, nothing in the testimony or psychological reports indicates that defendant could not comprehend the rights that were explained and read to him. *See Toste v. Lopes*, 701 F.Supp. 306, 313–14 (D.Conn.1987) (although psychological testimony indicated that petitioner was "mildly retarded" and of "dull normal intelligence," the evidence did not show an inability to knowingly waive his rights), *aff'd*, 861 F.2d 782, 783 (2d Cir.1988) (per curiam) (affirming for the reasons stated below and stating: "While the psychological testimony could support a conclusion that [defendant] has a personality disorder, it does not indicate that he is unable to comprehend sufficiently the rights set forth in *Miranda*."). Indeed, the psychological reports, because they were made during the sentencing phase, focus on defendant's post-conviction treatment rather than on whether defendant could understand his rights and knowingly waive those rights. Accordingly, this evidence does not undermine the government's evidence of a knowing waiver. *See United States v. Murgas*, 1997 WL 216274, at *9–*10 (N.D.N.Y. April 15, 1997) (doctors did not examine defendant for the purpose of determining whether defendant understood and knowingly waived his *Miranda* rights and therefore their testimony does not adequately rebut government's evidence of a knowing waiver).

■ As further evidence of defendant's incompetence, defendant points to his confusion over Detective Canter's statement "[t]hat's it, get to the station." Although Canter was joking when he made this statement, defendant apparently believed Canter was serious and proceeded to the station on his own. Defendant contends that this evidence further supports his contention that he was incapable of knowingly waiving his rights. As noted above, while this evidence, as with the other evidence, may show defendant had some mental disabilities, the addition of this evidence of misunderstanding is insufficient to show that defendant could not knowingly waive his rights.

Accordingly, we reject defendant's first argument and find that the government proved by a preponderance of the evidence that defendant knowingly waived his rights set forth in *Miranda*. We now turn to the question of the voluntariness of the waiver and the confession.

### 2. *Voluntary Waiver and Confession*

■ Defendant also argues that the government failed to prove by a preponderance of the evidence that he voluntarily waived his *Miranda* rights and voluntarily confessed. More specifically, defendant contends that the evidence presented below shows that the government agents tricked defendant into waiving his rights and confessing by (1) informing defendant and his mother that he was not in trouble, and (2) promising defendant that he could return home that same night. We disagree and hold that the government proved by a preponderance of the evidence that defendant voluntarily waived his *Miranda* rights and voluntarily confessed.

■ A voluntary relinquishment of a right occurs when the relinquishment is the "product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421, 106 S.Ct. at 1141. The question in this case is whether the government agents somehow misled defendant into believing that he could choose to speak without consequences, thus denying him any rational choice of whether to waive his rights and confess. Of course, "whether

intentional or inadvertent, the state of mind of the police is irrelevant to the question of the ... voluntariness of [defendant's] election to abandon his rights." *Id.* at 423, 106 S.Ct. at 1142; *United States v. Rutledge*, 900 F.2d 1127, 1130 (7th Cir.1990) ("The police are allowed to play on a suspect's ignorance, his anxieties, his fears, and his uncertainties; they just are not allowed to magnify those fears, uncertainties, and so forth to the point where rational decision becomes impossible."). Instead, we must focus on the totality of the circumstances to determine whether defendant was given the opportunity to deliberately waive his rights.

As already noted, the government presented evidence showing that, before questioning defendant, Agent Nelson twice explained to defendant that he could remain silent and that anything he said could be used against him. Nelson also twice explained to defendant that he had a right to an attorney and explained that he could speak to his mother before further questioning. At that point, defendant declined to speak to his mother and instead signed the waiver form. This evidence, by itself, indicates that defendant was left with a rational choice of deciding whether or not to speak to the government agents.

Defendant's previous role as a confidential informant for Canter and the government agents' previous explanation to the defendant that he was not in trouble does not undermine the proof that defendant was left with a rational choice. Although the defendant's status and the government promises, in isolation, might have made defendant believe he could speak without consequences, Agent Nelson's actions immediately before the questioning clearly dispelled any such belief. Nelson moved in front of defendant, informed him that he was an FBI agent, and showed defendant his credentials. Nelson told defendant that "he didn't have to say anything to [Nelson], that whatever he said could be used against him," that he was entitled to a lawyer, and that he could speak to his mother. Nelson then formally read defendant his *Miranda* rights and asked after each right whether defendant understood his rights. At that point, any belief defen-

dant might have had that he was free to speak without consequences no longer existed. Accordingly, the evidence presented by the government persuades us that the government met its burden of proving that defendant voluntarily waived his *Miranda* rights and confessed.[5]

Neither does Agent Nelson's telling defendant that he could go home that night change our conclusion. After making this statement, Nelson again informed defendant of the consequences of any statement he made to the officers by reading him his *Miranda* rights. As noted by the district court, therefore, it does not follow that defendant believed that no adverse consequences would attach to a confession.

In sum, then, we also reject defendant's second argument and hold that the government proved by a preponderance of the evidence that both the defendant's waiver of his rights and his confession were voluntary.

### 3. *Burden of Proof*

■ Defendant's final argument is that the district court erroneously shifted to the defendant the burden of proving that the confession was involuntary. To support this argument, defendant points to part of the district court's written opinion on the issue of admissibility of the confession. In that part of the opinion, the district court was deciding whether Agent Nelson's statement to defendant that he could go home that night was enough to cause defendant to involuntarily waive his rights. After determining that it was not, the district court then stated that

> [m]oreover, without credible testimony from [defendant] regarding his state of mind at the time he confessed, I decline to suppress his statement based on speculation that he incriminated himself, after being fully apprised of his *Miranda* warnings and executing a formal waiver, because he was led to believe that no adverse consequences would attach to the confession.  ...

I simply refuse to suppress the confession based on conjecture as to [defendant's] state of mind when he was free to provide evidence as to his state of mind without incriminating himself.

Defendant argues that the district court erroneously drew an adverse inference from defendant's failure to testify at the suppression hearing and therefore "relieved the prosecution of its burden of proving the voluntariness of the defendant's confession." This argument is meritless.

We need not decide whether an adverse inference may be drawn from a failure to testify at a suppression hearing because the record here clearly establishes that the district court drew no such inference. Although the district court noted that the defendant did not take the stand in order to provide evidence of his state of mind, the district court explicitly stated that "I emphasize that I infer nothing from [defendant's] failure to testify." Rather than drawing an adverse inference, the district court was simply indicating that, by not testifying, defendant had failed to contradict the government's evidence with his own testimony. *See United States v. Mullens*, 536 F.2d 997, 1000 (2d Cir.1976) (government's evidence of waiver was uncontradicted because defendant chose not to take the stand at the suppression hearing and rebut government's version of events even though he might have done so without risk that anything he said could be later used against him at trial). The evidence presented by the government *alone* was enough to convince the court that the government had proven by a preponderance of the evidence that defendant voluntarily waived his rights, and the district court found no need to draw an adverse inference. The district court noted that the government bears the burden of proof and decided that, based on all the evidence presented, "the record here is sufficient to satisfy [the government's burden of proof]." Nothing in the

---

**5.** 18 U.S.C. § 5033 requires "[w]henever a juvenile is taken into custody ... [t]he arresting officer shall *immediately advise such juvenile of his legal rights ... [and] shall also notify the parents ... of the rights of the juvenile.*" During the suppression hearing before the magistrate judge the defendant did not claim that by failing to notify his mother of his rights a violation of 18 U.S.C. § 5033 had occurred. Neither did he make such a claim when the issue of the admissibility of his confession was considered at trial. He also failed to make such a claim on appeal. Therefore, we consider the violation relied on by the dissenting opinion to have been waived.

record convinces us that the district court drew an adverse inference from defendant's failure to testify and therefore shifted to the defendant the burden of proving that his confession was inadmissible.

## CONCLUSION

The judgment of the district court is affirmed.

JON O. NEWMAN, Circuit Judge, dissenting:

Congress has required that "[w]henever a juvenile is taken into custody ... [t]he arresting officer shall immediately advise such juvenile of his legal rights ... [and] shall also *notify the parents ... of the rights of the juvenile ....*" 18 U.S.C. § 5033 (emphasis added). That provision was violated in this case. Because I believe the violation resulted in a confession that the Government has not shown would have been obtained had the statute's requirement been observed, I think the confession should have been suppressed. I therefore respectfully dissent.

The key facts are not disputed. At the time the confession was obtained, the defendant was 16. He had an IQ of 71 and was diagnosed with Attention Deficit Hyperactivity Disorder and "learning problems."

The questioning that produced the confession occurred at·a military police station at Fort Hamilton in Brooklyn, N.Y. When the questioning began, the federal agents regarded the defendant as an informant, not a suspect. Nevertheless, before any questioning occurred, the juvenile called his mother and asked her to come to the police station. When she arrived, a military police investigator informed her that her son was not a suspect and was not in any trouble, and obtained her permission to speak to her son without her presence. As the investigator candidly testified, he "knew that it might be easier to get information from [the juvenile] if his mother wasn't present."

During the course of the ensuing questioning, however, circumstances changed. The interrogating officers began to suspect the defendant of participation in a robbery. The principal questioner then shifted his chair to confront the defendant, changed his tone of voice, displayed his badge, and read the defendant his *Miranda* rights. As the District Court found, and the majority agrees, the defendant at that point was in custody.

When a juvenile is in "custody," section 5033 requires the arresting officers not only to notify him of his rights but also to notify his parents of the juvenile's rights. Such a notification was especially important in this case because permission to question the juvenile in the absence of a parent had been obtained only on the representation that the juvenile was not a suspect or in trouble, *i.e.,* that he was not in custody.

The obvious purpose of requiring notification to a parent of a child's legal rights is to assure that the parent can take steps to enforce those rights. Whether or not the juvenile's mother had a right to be present for any custodial interrogation, *see United States v. White Bear,* 668 F.2d 409, 412 (8th Cir.1982) (parent's presence not required for valid confession by juvenile), she was surely entitled to speak with him, to inform him of the changed circumstances, and to offer such advice as she deemed appropriate from her perspective as a parent. In requiring that a parent be notified of a child's rights, Congress recognized that notification to a child is not always sufficient to assure protection of the child's rights. The parent is notified not simply to educate the parent but to enable the parent to exercise parental responsibilities concerning the child's rights. The purpose, it has been well observed, is to "alert a more knowledgeable and responsible adult ... in order to protect the defendant from himself." *United States v. Nash,* 620 F.Supp. 1439, 1443 (S.D.N.Y.1985). The fact that the juvenile was offered and declined an opportunity to speak with his mother after custody attached only underscores how important it was to comply with section 5033 and let the parent decide what advice to give her son. As the Supreme Court has said, a juvenile in police custody needs

the aid of more mature judgment as to the steps he should take in [his] predicament.... [A]n adult relative ... could have given [the juvenile] the protection which his own immaturity could not."

**44**

*Gallegos v. Colorado,* 370 U.S. 49, 54, 82 S.Ct. 1209, 1213, 8 L.Ed.2d 325 (1962).

The Supreme Court has recognized that a juvenile may waive his Fifth Amendment rights and that even the denial of a request to speak with a parent is only one circumstance to be assessed in determining whether a juvenile in custody waived his constitutional right to remain silent. *See Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 2571–72, 61 L.Ed.2d 197 (1979). I agree with the majority in the pending case that the defendant's confession was not coerced in violation of the Constitution and that he waived his *Miranda* rights. But the statutory violation remains. The Supreme Court's decision in *Michael C.,* involving a state conviction tested against constitutional requirements, had no occasion to consider section 5033. Neither the District Court nor the majority has given any explicit consideration to the fact that the defendant's mother was not advised of his rights after custody attached as required by section 5033 or that her prior consent to questioning in her absence was obtained only on the assurance that he was not in custody. Though appellant has not cited section 5033, his brief presses the point that none of the interrogating officers "bothered to inform [the mother], who was sitting just outside, that her son had now been placed into custody." Brief for Appellant at 40. The absence of a statutory citation ought not to waive a legal issue, the facts of which are undisputed in the record and are advocated on appeal.

It may well be that not every instance of noncompliance with the requirements of section 5033 invalidates a juvenile's confession. *See United States v. Doe,* 701 F.2d 819, 822–23 (9th Cir.1983) (prompt notification excused where parents outside the United States). But where compliance is readily feasible, lack of compliance ought not to be excused unless it appears, with reasonable certainty, that the noncompliance did not contribute to obtaining the confession. That cannot be said here. The likelihood is that the mother, informed of her son's peril and of his rights, would have advised him not to speak to the agents before obtaining legal representation. The fact that, without his

parent's advice, he agreed to speak to the agents provides no assurance that he would have done so had section 5033 been followed.

For these reasons, I think the confession should have been suppressed, and the conviction vacated. At a minimum, the case should be remanded to afford the Government an opportunity to prove that the violation of section 5033 was harmless. For these reasons, I respectfully dissent.