Willie DeLEON, Petitioner–Appellant,

v.

Wayne L. STRACK, Superintendent
Fishkill Correctional Facility,
Respondent–Appellee.

Docket No. 00–2022.

United States Court of Appeals,
Second Circuit.

Submitted Sept. 21, 2000.

Decided Dec. 6, 2000.

Theodore S. Green, White Plains, NY (Green & Willstatter), for Petitioner–Appellant Willie DeLeon.

Michael E. Bongiorno, New City, NY (Rockland County District Attorney, Ann C. Sullivan, Assistant District Attorney, of counsel), for Respondent–Appellee Wayne L. Strack.

Before FEINBERG, MINER and POOLER, Circuit Judges.

FEINBERG, Circuit Judge:

Pursuant to a certificate of appealability, petitioner Willie DeLeon appeals from a judgment of the United States District Court for the Southern District of New York (Scheindlin, J.), dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, based on the Report and Recommendation (the Report) of Magistrate Judge Michael H. Dolinger. The certificate of appealability is limited to the issue of whether DeLeon was denied his due process right to a fair trial by being restrained in handcuffs.

## I. Background

In 1988, DeLeon was convicted of two counts of burglary in the first degree and one count of assault in the first degree in the County Court of Rockland in the State of New York. The convictions flowed from charges that he broke into the home of his estranged wife's mother, and there assaulted his wife while she slept beside her three-year-old child, punching her, kicking her and slashing her face and body with a razor.

DeLeon chose not to attend the first day of his trial. On the morning of the second day of his trial, the state trial judge held a robing room conference attended by counsel and Sergeant John Bugby of the Department of Corrections, in which Bugby repeated information that he had given the judge earlier that morning. Bugby reported that he had received word that DeLeon had stated that "he will attend this trial and tell the judge a few things." He also stated that a Lieutenant Tracy had received a report that when DeLeon appeared before the jury he was "going to do something where he is going to be shot by the deputies." The judge then stated that when he had arrived at the courthouse that morning he had received "fair warning from other people about Mr. DeLeon and his proposed activities," and that it was the intention of the court to maintain security and to assure the safety of everyone in the courtroom.

The judge then asked Bugby to describe the security measures that would be used in controlling DeLeon when he appeared in the courtroom. Bugby responded that because of DeLeon's statements and violent history, the Department of Corrections intended to handcuff DeLeon to a waist chain worn under his suit jacket. The judge noted that the chain and handcuffs would not be visible to the jury unless DeLeon made the restraints visible. Bugby further noted the Department of Corrections' intention to post an additional uniformed security officer within the courtroom. DeLeon's counsel made no objection to these proposals.

DeLeon was accordingly handcuffed to a waist chain under his suit jacket for the remainder of the trial. At the end of the second day of trial, outside of the presence of the jury, DeLeon's counsel stated that DeLeon had reported that the jury observed him being brought into the courtroom in handcuffs. The judge responded that the cuffs were not visible unless DeLeon held up his hands and displayed them. DeLeon responded that the jurors were approximately 10 or 15 feet away from him and "can look down upon the seat, and can see me, and on the top of the table moving papers to and fro. . . ." The following day, in the presence of the jury, DeLeon stood up and protested that he was "in handcuffs" and "unable to participate" in the trial. Later that day, DeLeon asked in the jurors' presence to have the handcuffs removed, alleging that he was unable to participate in the proceedings. After the jury left the courtroom that day, DeLeon's counsel asked to have the handcuffs removed, and the judge promised to discuss the issue with corrections officers as soon as possible. Finally, after the jury charge, DeLeon protested once more, outside of the jury's presence, that he was shackled. The trial record contains no other references to the issue. DeLeon's

counsel did not request and the judge did not give a cautionary instruction to the jury regarding the handcuffs.

Upon his conviction on all three counts, DeLeon was sentenced to concurrent terms of 10 to 20 years imprisonment on the burglary charges and one-half to fifteen years on the assault charge. Thereafter, the Appellate Division affirmed the conviction, see *People v. DeLeon*, 177 A.D.2d 641, 576 N.Y.S.2d 344 (2d Dep't 1991), and leave to appeal to the Court of Appeals was denied by Judge Titone, see *People v. DeLeon*, 79 N.Y.2d 855, 580 N.Y.S.2d 727, 588 N.E.2d 762 (1992). Thereafter, DeLeon's application to the New York State Supreme Court for a writ of habeas corpus was also denied.

In 1998, DeLeon filed the instant federal habeas petition in the Southern District, raising a host of issues. The petition was referred to Magistrate Judge Dolinger, who issued a 93–page Report addressing DeLeon's claims and recommending that the petition be dismissed. DeLeon filed no objections to the Report. Thereafter, District Judge Scheindlin adopted the magistrate judge's "thorough and thoughtful Report and Recommendation in full" and dismissed the habeas petition. However, the district court *sua sponte* issued DeLeon a certificate of appealability limited to the issue of whether DeLeon was denied his due process right to a fair trial by being restrained in handcuffs.

## II.   Effect of Failure to Object to the Magistrate's Report

■ Although DeLeon filed no objections to the Report, as already noted, the district court *sua sponte* issued a certificate of appealability on the issue just described. This case thus presents the question whether a district court adopting a magistrate judge's report may issue a certificate of appealability to a petitioner who has filed no objections to the report.

■ In *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), the Supreme Court held that a federal court of appeals could

adopt a rule conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections with the district court identifying those issues on which further review is desired. Such a rule, at least when it incorporates clear notice to the litigants and an opportunity to seek an extension of time for filing objections, is a valid exercise of the supervisory power that does not violate either the Federal Magistrates Act or the Constitution.

Since then, it has become clear in this circuit that a party generally waives judicial review of an issue when he or she fails to make timely objection to a magistrate judge's report, as long as all parties receive clear notice of the consequences of their failure to object. See *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam). This rule, however, is a nonjurisdictional waiver provision, and its violation may be excused in the interests of justice. See *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993).

■ We did just that in *United States v. Male Juvenile*, 121 F.3d 34 (2d Cir. 1997). There, a juvenile defendant in a criminal case did not object to a magistrate judge's recommendation to deny his motion to suppress his confession. See *id.* at 37. Nevertheless, the district court undertook a *de novo* review of the admissibility of the defendant's confession, hearing testimony from multiple witnesses before reaching the same result as the magistrate judge. See *id.* at 37–38. After the district court found the defendant guilty of the crime charged, he appealed, arguing that the district court had erroneously denied his motion to suppress. See *id.* at 38. We concluded that the waiver rule promoted judicial economy by "prevent[ing] a litigant from sandbagging the district judge by failing to object and then appealing," *id.* at 39 (internal citations and quotation

marks omitted, alteration in original), and that this purpose would not be served in denying appellate review when a district court has chosen to examine the merits of the case *de novo*, see *id.* "Even if neither party objects to the magistrate's recommendation, the district court is not bound by the recommendation of the magistrate," *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir.1989), and if in the absence of any party's objection a district court undertakes *de novo* review of a magistrate's report, there is no danger that an appellant will raise issues that were never considered by the district court. Similarly, permitting a party to appeal from a district court's *sua sponte* review of a magistrate judge's report to which no objections have been filed does not prevent other district courts from relying on such reports instead of undertaking *de novo* or other review.

The instant case presents circumstances analogous to those in *United States v. Male Juvenile.* When a district court judge *sua sponte* issues a certificate of appealability, just as when a district court judge *sua sponte* undertakes *de novo* review of the underlying issues, there is no danger that an appealing party may sandbag the district court by raising claims in the court of appeals that were never considered below. Permitting appellate review in such a case will not force appellate courts " 'to consider claims that were never reviewed by the district court' " or force district courts to " 'review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied with the magistrate's report.' " *Male Juvenile*, 121 F.3d at 39 (quoting *Thomas*, 474 U.S. at 148, 106 S.Ct. 466). In issuing a certificate of appealability, a district court in effect communicates to a court of appeals that it has reviewed the issue certified and found that the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In that situation, the district court controls the scope of appealable issues, and thus need

not unnecessarily review magistrate judge reports to which there were no objections. Under the circumstances, we conclude that the concern for judicial efficiency that underlies the waiver rule would not be advanced by applying it here. We therefore proceed to the merits of the appeal.

### III.  Merits of the Appeal

DeLeon argues that the state trial judge improperly delegated the decision regarding whether or how to restrain him to a corrections official rather than independently evaluating the need for the restraint. In the alternative, DeLeon argues that the trial court lacked a sufficient evidentiary basis for ordering the restraint and failed to hold a hearing to establish such a basis, thereby abusing its discretion and denying him a fair trial.

■ A review of the record before us shows that DeLeon's arguments are without merit. As discussed above, DeLeon raised in the state trial and appellate courts his protest regarding the restraints, and his claim was rejected at both levels. Under 28 U.S.C. § 2254, a federal court may grant habeas relief with respect to a claim adjudicated on the merits in state court proceedings only when the state court's adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or when the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In *Illinois v. Allen*, a criminal prosecution for robbery, the Supreme Court held it constitutionally permissible to use physical restraints "as a last resort" to control abusive or violent defendants, leaving the decision of when such restraints would be used to the discretion of the trial court. 397 U.S. 337, 343–44, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Since then, this Cir-

cuit has further examined the issues presented by shackling prisoners at trials in such civil cases as *Hameed v. Mann*, 57 F.3d 217, 222 (2d Cir.1995) (prisoner's § 1983 action) and *Davidson v. Riley*, 44 F.3d 1118, 1122–23, 1126 (2d Cir.1995) (prisoner's § 1983 action). In these cases, we have approved the use of restraints when the trial court independently exercises its discretion in ordering the restraints to maintain safety and security, imposes no greater restraints than are necessary and takes steps to minimize the prejudice flowing from the restraints. Neither *Hameed* nor *Davidson* involved a petition for habeas corpus, as this case does, so the comparatively restricted review provisions set forth in 28 U.S.C. § 2254(d) did not apply.[1] But even if *Hameed* and *Davidson* and their more detailed statements of required due process protection for shackled prisoners provided the controlling rule under § 2254, we would find that DeLeon's due process rights were not violated when he was handcuffed during trial.

The state trial judge does not appear to have improperly delegated to corrections officials the decision whether to restrain DeLeon. Instead, the judge clearly indicated that it was "the intention of this Court to maintain security and assure the safety of everyone who is going to be in the courtroom." He simply relied on Sergeant Bugby to describe the particular form of restraint that would be applied and then made a judgment as to whether to impose it. Alternatively, even if the state judge did not exercise independent judgment, it is not clear that such an independent exercise of discretion is even required when restraints will not be visible to a jury. See *United States v. Zuber*, 118 F.3d 101, 103–04 (2d Cir.1997) (finding that no independent judicial evaluation of the need for restraints is required in nonjury sentencing proceedings).

Defense counsel did not dispute the veracity of the information on which the trial judge relied in concluding that DeLeon should be handcuffed—namely, that DeLeon had made implied threats against those in the courtroom. Thus, there was no need to undertake an evidentiary hearing prior to ordering that DeLeon be handcuffed, and defense counsel sought no such hearing. Cf. *Hameed*, 57 F.3d at 222. In addition, the trial court undertook measures to minimize the prejudice that might flow from DeLeon being handcuffed during his jury trial. In such cases, the danger that jurors will be biased by the handcuffs is the paramount concern. See *Zuber*, 118 F.3d at 103–04. But here, the record indicates that DeLeon's handcuffs were concealed under his suit jacket and there is no persuasive reason to doubt the judge's ability to determine (as he did) that they were invisible to the jury until such time as DeLeon revealed them. As a result, any prejudice that resulted from the handcuffs was caused by DeLeon's own action in calling the jury's attention to them.

Accordingly, even under *Hameed* and *Davidson*, DeLeon would not be entitled to a new trial. *A fortiori*, DeLeon would not be entitled to the writ under amended § 2254, which we have characterized as a Congressional effort to "restrict[ ] the scope of federal habeas corpus." *Francis S. v. Stone*, 221 F.3d 100, 108 n. 10 (2d Cir.2000). Certainly, the actions of the trial court in ordering the restraints do not appear contrary to, or an unreasonable application of, federal law. See 28 U.S.C. § 2254(d)(1). Neither does the record show that the decision to handcuff DeLeon was based on an unreasonable determination of facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(2). There is no indication that the trial court was unjustified in relying on the hearsay evidence provided by the court security officer in the absence of any dispute as to

---

1. Indeed, both cases were decided before enactment of the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (1996), which amended the pertinent portions of the federal habeas corpus statute, 28 U.S.C. § 2254(d).

the veracity of that evidence or any request for a hearing to establish the factual underpinnings for the decision.

## IV. Conclusion

For the reasons stated above, we hold that the district court did not err in concluding that DeLeon had failed to demonstrate that he was denied a fair trial by being handcuffed. We affirm the judgment of the district court.