Leslye KNOX, individually, as personal representative of the Estate of Aharon Ellis and as natural guardian of plaintiffs Jordan Terrell Ellis, Reuven Carter, Shanon Carter, Shayrah Carter, Yoshavyah Carter and Amitai Carter, Jordan Terrell Ellis, minor, Reuven Carter, minor, Shanon Carter, minor, Shayrah Carter, minor, Amitai Carter, minor, by their next friend and guardian Leslye Knox, Prince Shaleak, Mellonee Ellis, Francine Ellis, Lynne Ellis, Yihonadav Ellis, Tsaphrirah Ellis and Aron Carter, Plaintiffs,

v.

THE PALESTINE LIBERATION ORGANIZATION, The Palestinian Authority (aka "The Palestinian Interim Self–Government Authority" and/or "The Palestinian Council" and/or "The Palestinian National Authority"), Yasser Arafat, Marwan Barghouti, Nasser Awis, Ziad Muhammad Daas, Estate of Abdel Salam Sadek Hassuna, deceased and John Does 1–99, Defendants.

No. 03 Civ. 4466VM.

United States District Court, S.D. New York.

June 22, 2005.

David J. Strachman, McIntyre, Tate, Lynch & Holt, L.L.P., Providence, RI, for Plaintiffs.

Ramsey Clark, New York City, for Defendant.

## *DECISION AND ORDER*

MARRERO, District Judge.

### I. BACKGROUND

Plaintiffs, the representative and heirs and survivors of the Estate of Aharon Ellis ("Ellis") (collectively "Plaintiffs") commenced this action asserting claims arising under the Antiterrorism Act of 1990, 18 U.S.C. 2331 *et seq.* (the "ATA"), and other related common law tort causes of action. As described in the Court's prior opinion in this case, reported as *Knox v. Palestine Liberation Organization*, 306 F.Supp.2d 424 (S.D.N.Y.2004) (*"Knox I"*), Plaintiffs allege that Ellis was murdered in a terrorist attack that occurred in Israel in January 2002, and that the shooting was planned and carried out by Abdel Salam Sadek Hassuna ("Hassuna") acting in concert with and under the direction and assistance of the Palestinian Liberation Organization ("PLO"), the Palestinian Authority ("PA"), Yasser Arafat ("Arafat"), chairman of the

PLO and leader of the PA, as well as numerous other named and unnamed individuals (collectively, "Defendants").[1] In *Knox I*, the Court denied Defendants' motion to dismiss for lack of subject matter jurisdiction, concluding that neither the PLO nor the PA was entitled to immunity from suit under the doctrine of sovereign immunity, and that the political question doctrine did not render the controversy here nonjusticiable. Familiarity with the Court's resolution of these issues is assumed.

While *Knox I* resolved Defendants' challenge to the Court's subject matter jurisdiction, it deferred adjudication of Defendants' challenge to the Court's assertion of personal jurisdiction over them until issues related to jurisdictional discovery had been resolved. *See Knox I*, 306 F.Supp.2d at 426 n. 1. After the parties failed to agree on a plan to complete jurisdictional discovery, the Court referred the matter to Magistrate Judge Theodore H. Katz. As described in Judge Katz's Report and Recommendation and Order, dated March 21, 2005 ("Report"), which is reported as *Knox v. Palestine Liberation Organization*, No. 03 Civ. 4466, 2005 WL 712005 (S.D.N.Y. Mar. 21, 2005), and is incorporated hereto, Defendants failed to comply with numerous court orders related to jurisdictional discovery requirements. As a consequence, Plaintiffs sought imposition of sanctions pursuant to Fed.R.Civ.P. 37. Specifically, Plaintiffs requested that the Court take as established that the PLO and PA have sufficient contacts in the United States to support the exercise of personal jurisdiction over them.[2]

After providing several extensions to Defendants and reserving decision on Plaintiffs' motion for sanctions for several months while Defendants represented that they were seeking to comply with the Court's discovery orders, Judge Katz issued the Report. The Report recommends that the Court sanction the PLO and PA by taking as established that they have sufficient contacts with the United States to support the exercise of personal jurisdiction over them, and that Defendants should be required to compensate Plaintiffs for costs and attorneys' fees incurred in attempting to secure compliance with the Court's discovery orders. The Report also explicitly notes that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72, the parties were required to file written objections to the Report's recommendation with respect to personal jurisdiction within ten days from service of the Report. It is undisputed that the ten-day period expired by no later than April 7, 2005. Defendants were also directed to reach agreement by April 8, 2005 on the amount of attorneys' fees and costs owed pursuant to the sanction, or to submit their opposition to Plaintiffs' fee request.

By affidavit dated April 1, 2005, and filed with the Court on April 4, 2005, counsel for Plaintiffs contended that Plaintiffs have incurred $19,625.30 in fees and costs "as a result of defendants' refusal to comply with discovery orders." (Affidavit of David J. Strachman, dated April 1, 2005 ("Strachman Aff.") ¶ 6.) Defendants have not submitted any substantive opposition to the amount of fees or costs alleged by Plaintiffs.

Defendants did, however, submit objections to the Report's recommendation that sanctions be imposed on them. The Objections of Defendants Palestinian Authority and Palestine Liberation Organization, dated April 9, 2005 ("Objections"), are not a model of clarity. Defendants first argue that the imposition of sanctions on them for failure to comply with jurisdictional discovery demands would be unjust because the discovery

---

1. Plaintiffs have voluntarily dismissed defendants Arafat, Marwan Bargouti, Nasser Awis, Ziad Muhammad Daas and Hassouna without prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(i). (*See* Plaintiffs' Notice Pursuant to Fed.R.Civ.P. 41(a)(1)(i) of Voluntary Dismissal of the Action Against Certain Defendants, dated Apr. 12, 2005.) Consequently, the only remaining named defendants in this action are the PLO and PA. The Court will refer to these two parties collectively as "Defendants" throughout the remainder of this opinion.

2. Plaintiffs have voluntarily dismissed defendants Yasser Arafat, Marwan Bargouti, Nasser Awis, Ziad Muhammad Daas and the Estate of Abdel Salam Sadek Hassouna without prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(i). (*See* Plaintiffs' Notice Pursuant to Fed.R.Civ.P. 41(a)(1)(i) of Voluntary Dismissal of the Action Against Certain Defendants, dated Apr. 12, 2005.)

sought was not necessary for the Court to establish personal jurisdiction over Defendants. Defendants note that in two other ATA cases filed against them, courts asserted personal jurisdiction over them without requiring jurisdictional discovery. (*See* Objections ¶ 6) (noting that "[p]ersonal jurisdiction over the PA and PLO was upheld without any need for jurisdictional discovery in both *Ungar [v. Palestinian Authority,* 153 F.Supp.2d 76 (D.R.I.2001)] and *Biton [v. Palestinian Interim Self–Government Authority,* 310 F.Supp.2d 172 (D.D.C.2004)]")) They allege that because jurisdictional discovery was unnecessary in this case, "it would appear that there are reasons other than a putative need for discovery—reasons that may be well outside this case—which prompt plaintiffs['] jurisdictional discovery demands in this case." (Objections ¶ 9.)

Second, Defendants contend that Judge Katz failed to take into account the challenges Defendants face in complying with discovery requests while attempting to govern the Palestinian people, address transition issues associated with the death of former PA and PLO leader Yasser Arafat, and engage in other critical tasks. (*See id.* ¶¶ 7–8, 11–14.)

Third, Defendants appear to stand on principle and assert that the assertion of personal jurisdiction over them represents an improper infringement of the sovereignty of Palestine, which they claim qualifies for immunity as a state. Consequently, "[c]onsiderations of sovereignty require defendants to oppose the assertion of personal jurisdiction over them" (*id.* ¶ 11), and "the broader public interests at stake [are not] served by sanctions under all the circumstances of this case." (*Id.*)

The Objections were not received by the Clerk of Court until April 11, 2005, four days after the ten-day deadline established by Rule 72 and 28 U.S.C. § 636(b)(1)(C) expired. Consequently, Defendants also filed a Motion to Enlarge Time for Objections ("Motion to Enlarge Time"), pursuant to Fed.R.Civ.P. 6(b).[3] The motion asserted that "the reason

why the Objections have [not] been filed earlier [is] that defendant['] counsel are moving out of the offices they have occupied for 18 years. . . . Getting ready for the move is resulting in turmoil and disorganization as well as time consuming non-legal tasks." (Motion to Enlarge Time ¶ 3.)

Plaintiffs replied by letter dated April 12, 2005, opposing Defendants' Motion to Enlarge Time and each of Defendants' objections to the Report.

## II. *DISCUSSION*

### A. *DEFENDANTS' OBJECTIONS*

The Court declines to grant Defendants' Motion to Enlarge Time, but holds that even if the extension were granted, Defendants' objections are meritless. Consequently, the Court adopts the Report in its entirety.

Pursuant to Fed.R.Civ.P. 6(b)(2), Defendants' Objections should be deemed waived unless their failure to respond to the Report or seek an extension by April 7, 2005, the final day of the ten-day period for filing such responses pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72, was the result of "excusable neglect." *See, e.g., Thyroff v. Nationwide Mut. Ins. Co.,* No. 00–CV–6481T, 2004 WL 1529246 (W.D.N.Y. July 1, 2004). In *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court held that " 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." Courts are directed to evaluate all relevant circumstances, including "(1) the danger of prejudice to the non-moving party, (2) the length of delay and impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the moving party, and (4) whether the moving party acted in good faith," *Williams v. KFC Nat. Management Co.,* 391 F.3d 411, 415 (2d Cir.2004) (citing *Pioneer,* 507 U.S. at 395, 113 S.Ct.

---

3. Fed.R.Civ.P. 6(b) requires that a request for enlargement of time must be made by motion where it is made after the expiration of the specified period of time, and may only be granted "where the failure to act was the result of excusable neglect." Fed.R.Civ.P. 6(b).

1489), when determining whether neglect should be deemed excusable.

The Second Circuit, however, has taken what it terms a "hard line" in cases addressing when neglect is "excusable." *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 368 (2d Cir.2003). It has held that "failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect." *Id.* (quoting *Canfield v. Van Atta Buick/GMC Truck, Inc.,* 127 F.3d 248, 250 (2d Cir.1997)). In *Silivanch,* the Second Circuit held that a district court abused its discretion where it permitted a litigant to file a notice of appeal two days after the deadline for filing such appeals had passed, even though the complex procedural history of the case rendered the litigant's story sympathetic. It concluded that "the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced." *Id.*

The Court concludes that under the approach taken in *Silivanch* and the relatively unsympathetic facts of this case, Defendants should be deemed to have waived their right to object to the Report. While the approximately four-day delay caused by Defendants' neglect did not prejudice Plaintiffs, impact judicial proceedings, or necessarily evince bad faith conduct, application of the third *Pioneer* factor counsels against granting the motion. Defendants' impending move, though it may have caused "turmoil and disorganization" (Motion to Enlarge Time ¶ 3), does not amount to a factor outside of Defendants' "reasonable control," *Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489, justifying their failure to submit a timely request for an extension of time, much less timely objections to the Report.[4] The Second Circuit has "focused on the third [*Pioneer*] factor," and concluded that "where 'the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.'" *Silivanch,* 333 F.3d at 366–367 (quoting *Canfield,* 127 F.3d at 250–51). The Court acknowledges that there may be circumstances

under which, arguably, the policy and practical considerations underlying the notice of appeal time limit imposed by Fed. R.App. P. 4(a)(5) that was at issue in *Silivanch* and that supported its "hard line" doctrine may be distinguished from those that arise in the context of objections to a Magistrate Judge's Report and Recommendations under 28 U.S.C. § 636(b)(1)(C), and that these considerations may warrant the more flexible approach that *Pioneer* counsels. *See, e.g., Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (noting that "because the rule [limiting judicial review of a Report and Recommendation where objections are not timely filed] is a nonjurisdictional waiver provision, the Court of Appeals may excuse the default in the interests of justice"); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (holding that a *pro se* litigant's failure to submit timely objections to a Report and Recommendation would be excused where the consequences of that failure were not clearly explained to the litigant). But the Court is not persuaded that the facts presented by the matter at hand suggest such a case. As Defendants have not provided the Court with a reason to deviate from the Second Circuit's "hard line" rule, the Court denies Defendants' Motion to Enlarge Time.

■ Although Defendants' failure to submit timely objections to the Report permits the Court to adopt the Report in its entirety without "without making a *de novo* determination as to its validity," *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997), the Court briefly reviews Defendants' Objections to explain why they lack merit. The Supreme Court has clearly held that "[b]ecause the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). In light of this principle, Defendants' approach to jurisdictional discovery reflects ei-

---

4. Defendants do not assert that their office move prevented them from receiving timely notice of the Report or created any obstacle to submitting a timely request for an extension of time to respond to the Report.

ther a profound misunderstanding of the law or a bad faith desire to impose costs and delays on Plaintiffs. If Defendants believed that discovery would only confirm the propriety of this Court's assertion of personal jurisdiction over them (*see* Objections ¶ 9), they could have waived any objections to personal jurisdiction and avoided altogether the need to respond to any discovery requests related to this matter. If Defendants instead wished to stand on principle and refuse to accede to the Court's assertion of personal jurisdiction over them (*see* Objections ¶ 14), then they should have informed the Court of their decision and allowed it to determine whether jurisdictional sanctions were appropriate without generating more than a year's delay and thousands of dollars in legal expenses.

Defendants took neither of these approaches. Instead, as described in the Report, they informed the Court through counsel that they wished to contest the Court's assertion of personal jurisdiction over them on the merits; continually missed deadlines that they themselves had agreed to meet for providing discovery to Plaintiffs; and required Plaintiffs and the Court to expend substantial resources in a futile effort to obtain Defendants' compliance with discovery orders. The Court will not tolerate such practices in the future, and will consider any unexplained repetition of them sufficient grounds for imposition of sanctions on Defendants' counsel personally as well as on Defendants pursuant to the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, or the Court's inherent power to impose sanctions for bad faith conduct. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 42–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

The Report properly recommended imposition of jurisdictional sanctions against Defendants on the basis of this conduct and the independent evidence supporting assertion of personal jurisdiction over Defendants. In *Insurance Corp. of Ireland,* the Supreme Court authorized courts to impose jurisdictional sanctions: 1) if the sanction is just; and 2) if it is "specifically related to the particular 'claim' which was at issue in the order to provide discovery." 456 U.S. at 707, 102 S.Ct. 2099. As the Report held, both of

these factors are present in this case. Defendants have essentially conceded in their Objections that assertion of personal jurisdiction over them in this case would not be legally improper, and personal jurisdiction over them was held to be proper in *Ungar* and *Biton.* Moreover, Defendants received multiple warnings and violated several discovery orders before the Report recommended imposition of sanctions. The Court appreciates that many important and competing demands face the leadership of the PA and PLO, but these demands do not shelter them from accountability whenever they choose to avoid complying with court orders. This is not a matter of unfairness or bias; the United States of America, when it is a party before the Court, is similarly obligated to comply with judicial rulings. Consequently, imposition of sanctions on Defendants would not be unjust. As the Report also properly held, the second requirement of *Insurance Corp. of Ireland* is satisfied by the close connection between the jurisdictional sanction sought and Defendants' failure to comply with orders related to jurisdictional discovery.

### B. *PLAINTIFFS' REQUEST FOR FEES AND COSTS*

■ The Court concludes that Plaintiffs' request for an award of $19,625.30 in fees and costs should be granted. The Second Circuit has held that when determining the amount of compensatory sanctions to be awarded, "due process requires, at a minimum, that: (1) the party seeking to be compensated provide competent evidence, such as a sworn affidavit, of its claimed attorney's fees and expenses; and (2) the party facing sanctions have an opportunity to challenge the accuracy of such submissions and the reasonableness of the requested fees and expenses." *Mackler Productions, Inc. v. Cohen,* 225 F.3d 136, 146 (2d Cir.2000). In this case, both requirements have been satisfied. Plaintiffs' counsel, David J. Strachman ("Strachman"), has submitted a sworn affidavit to the Court, with supporting documentation, asserting that Plaintiffs have incurred $19,625.30 in fees and expenses "solely as a result of defendants' refusal to comply with discovery requests and the orders of the

Court" (Strachman Aff. ¶ 4), and that the "fees and costs incurred for professional services and expenses as itemized in Exhibit A [totaling $19,625.30] are fair and reasonable." (*Id.*) Defendants were given the "opportunity to challenge the accuracy of such submissions and the reasonableness of the requested fees and expenses" by the Report, which gave them until April 8, 2005 to either reach agreement with Plaintiffs on the fee request or "submit their opposition to the request." (Report, 2005 WL 712005, at *7.) Defendants have not submitted any opposition papers, even though more than two months have passed since the April 8 deadline.

The Court has independently examined Plaintiffs' request and concluded that it is reasonable under the circumstances. As described in the Report, Defendants' litigation practices with respect to jurisdictional discovery required Plaintiffs to file numerous papers and attend several hearings before this Court, Magistrate Judge Katz, and even the Second Circuit when Defendants sought a discovery stay in the appellate court while its interlocutory appeal on the issue of subject matter jurisdiction, ultimately withdrawn on the eve of argument, was pending. It is thus unsurprising that over sixty-seven hours of time, as well as significant travel expenses, were spent by Strachman in a futile effort to obtain Defendants' compliance with discovery orders. The hourly rate asserted by Strachman, who states that he personally served as counsel for Plaintiffs on this matter (*see* Strachman Aff. ¶ 3), also appears reasonable, given his experience and qualifications (*see id.* ¶ 2), and given the complexity and importance of the matters at issue in this case. Thus, the Court awards Plaintiffs $19,625.30 in attorney's fees and costs. *See Fustok v. ContiCommodity Services, Inc.,* 873 F.2d 38, 40 (2d Cir.1989) (holding that a hearing was not necessary to determine the propriety of a request for attorney's fees in light of the record before the district court and the district court's experience with the case).

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of Plaintiffs Leslye Knox, et al. ("Plaintiffs") for an order pursuant to Fed.R.Civ.P. 37(b)(2)(A) establishing as a sanction facts sufficient to permit the exercise of personal jurisdiction over defendants the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") (collectively, "Defendants") is GRANTED; and it is further

**ORDERED** that Defendants' Motion to Enlarge Time for Objections is DENIED; and it is further

**ORDERED** that Defendants are ordered to pay Plaintiffs $19,625.30 in fees and costs pursuant to Fed.R.Civ.P. 37(b)(2)(E); and it is finally

**ORDERED** that the parties are directed to appear at a conference with the Court on July 14, 2005 at 4:00 p.m. to discuss the status of the case and further proceedings in light of this Order.

**SO ORDERED.**